IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

NEAL JOHN TIBBS,

      Petitioner,                      No. CIV S-05-2334 LKK KJM P

   vs.

D. ADAMS, Warden, et al.,

      Respondents.                <u>ORDER</u>

_____/

        Petitioner is a state prison inmate proceeding with counsel with a petition for a writ of habeas corpus under 28 U.S.C. § 2254. Respondent has filed a motion to dismiss, arguing that the action was filed outside the applicable statute of limitations; petitioner counters that he is entitled to equitable tolling as a result of his mental condition and of attorney misfeasance.

        On January 23, 2008, the court selected April 14, 2008 as the date for an evidentiary hearing on the question of equitable tolling and ordered the parties to file any briefing according to the schedule it promulgated. Petitioner filed a brief on February 22, 2008 and attached a copy of a report on petitioner's mental condition prepared by Dr. Laura Geiger, Psy. D. Dr. Geiger described the psychological tests she administered to petitioner and the additional information she considered in reaching her conclusions about petitioner's mental state.

1

1    At the hearing on April 14, David Eldridge, counsel for respondent, objected to
2 Dr. Geiger's testimony on the authority of Daubert v. Merrell Dow Pharmaceuticals, Inc., 509
3 U.S. 579 (1993). RT 4. The court noted respondent's objection for the record but allowed the
4 witness to testify. RT 7. In the course of her testimony, Dr. Geiger described the psychological
5 tests she administered to petitioner. See, e.g., RT 7, 18, 38. At the conclusion of Dr. Geiger's
6 testimony, Mr. Eldridge asked the court to direct Dr. Geiger to provide copies of the material she
7 relied upon in reaching her conclusions. RT 85, 87.

8    When the hearing resumed after a break, Mr. Eldridge again argued that "she's
9 offered expert testimony. . . [and] we're entitled to know the basis of it . . . [w]e are not stuck
10 with simply her assurances . . . that . . . it's good data [and] I drew reasonable conclusions from
11 it." RT 89.

12    Krista Hart, petitioner's counsel, argued that Dr. Geiger's "ethics don't allow her
13 to simply release her notes and results to just anybody because of the concern that people who
14 aren't able to evaluate them will use them in a manner that's inappropriate, or not intended."
15 RT 90. Ms. Hart suggested that her position might be different if respondent wanted Dr. Geiger
16 to release the material to a psychologist. RT 91. Ms. Hart noted that Dr. Geiger had no objection
17 to releasing the test protocol, but objected to the release of other material.

18    Although "a little mystified as to why the request [was] coming today," this court
19 agreed to direct Dr. Geiger to turn over those materials not barred from release by her code of
20 ethics. RT 93. The court suggested that Mr. Eldridge ask Dr. Geiger for the release of her
21 materials and then file a motion to compel if dissatisfied with what he received. RT 95. The
22 court recognized Mr. Eldridge's "strategic judgment" to decide not to request the materials
23 earlier. RT 95.

24    Following the hearing, Mr. Eldridge pursued his formal request that Dr. Geiger
25 release her file on petitioner. Mr. Eldridge now has filed a motion to compel. In a letter to
26 /////

petitioner's counsel, Dr. Geiger explained:

> I am not able to release raw data or copies of test materials to anyone that [sic] is not qualified by education, training and experience to examine these materials. . . . [I]f it is court ordered I would be happy to supply copies of the requested materials to another person who is qualified to examiner [sic] and interpret these raw data, such as a licensed psychologist.

Motion to Compel, Ex. A. Dr. Geiger also provided a copy of excerpts from the American Psychological Association (APA) Ethics Code; Mr. Eldridge has attached them to his motion as well. Section 9.04(a) of the APA code provides in part that "in many instances release of confidential information . . . is regulated by law;" 9.04(b) recognizes that "[i]n the absence of a client/patient release, psychologists provide test data only as required by law or court order." Section 9.11 provides in part that a psychologist must make "reasonable efforts to maintain the integrity and security of test materials . . . consistent with law and contractual obligations. . . ." Id.

Respondent's motion to compel the release of these materials argues that he needs them in order to make a successful Daubert attack on Dr. Geiger's testimony. Petitioner counters that discovery is not a matter of right in a habeas proceeding; that if discovery were appropriate, respondent should have sought the materials before the hearing; and that respondent's Daubert challenge is not well-taken.

The court declines to resolve respondent's Daubert claim at this point in the litigation: whatever its merits, he is entitled to explore the issue. However, this court may not reach any such challenge if it finds that Dr. Geiger's testimony does not show that petitioner has or had the level of mental impairment sufficient to support equitable tolling as established by Laws v. Lamarque, 351 F.3d 919 (9th Cir. 2003).

Even if respondent made no Daubert claim or if that claim is bootless, he is nevertheless entitled to the materials, including the raw test data, upon which Dr. Geiger relied. It is true that the usual rules of discovery, whether civil or criminal, do not apply in habeas

proceedings. Rule 6, Rules Governing § 2254 Cases. Evidentiary hearings in habeas cases are governed, however, by the Federal Rules of Evidence. Fed. R. Evid. 1101. Under Rule 705 of the Federal Rules of Evidence, an "expert may . . . be required to disclose the underlying facts or data on cross-examination." See also Southern Union Company v. Southwest Gas Corporation, 180 F.Supp.2d 1021, 1059 (D. Ariz. 2002) (under Fed. R. Civ. P. 26 (a)(2), party must disclose documents considered by experts). And in the context of criminal discovery provisions, courts have recognized that raw data underlying a psychologist's or psychiatrist's report is discoverable. See United States v. Johnson, 383 F.Supp.2d 1145, 1166 (N.D. Iowa 2005) (interpreting Fed. R. Cr. P. 12.2). Finally, in one unpublished case, a court found that its order directing a psychologist to release such material would resolve any ethical issue in the release. United States v. Samples, 2004 WL 759567 (D. Minn. 2004); see also Chiperas v. Rubin, 1998 WL 765126 (D.D.C. 1998).

Even though respondent's request came at the end of the evidentiary hearing, the parties' closing briefs still are due. Respondent therefore still has the opportunity to bring to the court's attention issues he believes are raised by Dr. Geiger's data and materials.

IT IS THEREFORE ORDERED that:

1. Respondent's motion to compel (docket no. 53) is granted;

2. Dr. Laura Geiger is directed to release all the raw data and other materials she considered in reaching her expert opinion to counsel for respondent within seven days of the date of this order; and

3. The Clerk of the Court is directed to serve a copy of this order on Dr. Laura Geiger, Collegium Scientifica, LLC, 4983 East Yale Ave., Suite 101, Fresno, California 93727.

DATED: June 24, 2008.

U.S. MAGISTRATE JUDGE

tibbs2334.mtc

4